JOHN SINNICKSON v. ISAAC JOHNSON AND WILLIAM JOHNSON.

In case on demurrer.

Although the statute of New Jersey, authorizing John Denn, for his own ac-commodation, to erect a dam across Salem Creek, a navigable water, pro-vides no remedy for damages to the owners of meadow, by causing an over-flow of water on them; yet it is no defence against an action for such damages.

*R. P. Thompson* for plaintiff.

*W. N. Jeffers* for defendants.

This action was brought to recover damages for the overflow of a body of meadow land, caused by the erection of a dam of mud, timber and stone, by the defendants, across Salem Creek in the county of Salem, at Denn's bridge.

## THE PLEADINGS.

### DECLARATION.

New-Jersey Supreme Court
of September Term, A. D. 1836.

*County of Salem ss.*

Isaac Johnson and William Johnson were attached to answer John Sinnickson, of a plea of trespass on the case, &c. and thereupon the said John Sinnickson, by Richard P. Thompson, his attorney, complains that whereas, he the said John Sinnickson, on the first day of July, in the year of our Lord, one thousand eight hundred and thirty-five, and long before and continually afterwards hitherto, was and yet is seized in his demesne as of fee, of and in several tracts or pieces of meadow ground, the first of which contains seventy-one acres; the second, thirty-five acres; the third, seventeen acres; the fourth, four acres; the fifth, one acre; and being in the whole, one hundred and thirty acres more or less. And all of which, are situate in a certain body of marsh or meadow ground, called the "Fishing Island Bank Company," lying and being in the township of Lower Penns Neck, in the county of Salem, adjoining to a certain stream of water called Salem Creek, the water of which said creek, hath run and ought to run, and from time immemorial hath until the obstructions hereafter mentioned, run in the ancient usual course, thereby and along the aforesaid body of marsh or meadow ground, called "The Fishing Island Bank

Company," in which, &c. without obstructions, &c. yet the said Isaac Johnson and William Johnson well knowing the premises, but contriving, designing and maliciously intending unjustly to aggrieve, injure and prejudice him the said John Sinnickson, and to hurt and damnify him in the use, possession, occupation and enjoyment of the said several tracts of meadow ground with the appurtenances, and to deprive him of the use, benefit and profit thereof, with all and singular the advantages therefrom arising to the said plaintiff; on the said first day of July, in the year aforesaid, did raise and build, and anew erect, make and construct, a dam of wood, timber, mud, stone and other materials, without the leave or license of the said John Sinnickson, across the said stream of water called Salem Creek, below the aforesaid body of marsh or meadow in which, &c. and below the said several tracts of meadow ground, of the said John Sinnickson, and hath continued the same from thence hitherto, and thereby so obstructed, stopped up, heightened and impeded the run and flow of the tides and currents of said Salem Creek, that by reason and means thereof, the water of said Salem Creek, afterwards that is to say, on the first day of July, in the year aforesaid, and on divers other days and times between that day and the eighteenth day of June, A. D. 1836, did not run off and fall or subside low enough, against, near to, and about the aforesaid body of meadow, and the said several tracts of marsh of the said plaintiff, to let the rain water and other water run off of said meadow, out of the sluices and water works of said meadow, as formerly, before the dam and obstructions aforesaid, were erected by the said defendants as aforesaid, but by reason of such dam obstructing and impeding the flow and fall of the water of said Salem Creek, to lay and press against the sluice doors and outlets of water of said body of marsh or meadow, and did cause the water of said Salem Creek, to lay and remain higher in the said Salem Creek, than the water in the ditches and on the body of marsh or meadow aforesaid, and in the said meadow of the said plaintiff as aforesaid, that thereby, and by means there-of, the rain water and other water being in and upon the same and in the ditches and water courses thereof, and in and upon the said several tracts of meadow of the said plaintiff, was prevented from running off and properly draining the same, as be-

fore the erection of the said dam, by the said defendants, and the obstructions so by the said defendants placed in Salem Creek as aforesaid; by means whereof, the rain water and other water, that is to say, on the first day of July, in the year aforesaid, and on divers other days and times between that day and the eighteenth day of June, A. D. 1836, aforesaid, hath overflowed, remained upon and covered the said tracts of meadow of the said plaintiff, whereby not only all the fine grasses there growing and being, that is to say one hundred and thirty acres, more or less of clover grass, timothy grass, and herd grass, of the value of two thousand dollars, has been drowned out, scalded, washed away, destroyed, rotted and ruined; but by reason and means thereof, rushes, wild and worthless grasses, and noxious weeds have sprung up, grown over and spread upon the said meadow ground of the plaintiff, as aforesaid; and by reason and means of said overflow and impeding of water upon the said several tracts of meadow ground of the said plaintiff as aforesaid, the surface of the said meadow ground has been soured, ruined and spoiled, and rendered wholly useless and unproductive for the growth of fine and good grasses; and the meadows of the said plaintiff, are rendered by the means aforesaid, so soft, wet and miry, as to have become impassable for men, cattle, teams and horses to go upon the same; and the ditches and water courses of said meadow ground of the said plaintiff, are filled up with mud, earth, dirt, and grown over with rushes, and rendered useless.   By means of which said several premises, he the said John Sinnickson is greatly injured and aggrieved, and hath sustained great loss and destruction in his said meadow ground, as aforesaid; and hath been and yet is deprived of the use, benefit, profit and advantages thereof, which he was accustomed to have before the erection of the said dam and obstructions across and in the Salem Creek, as aforesaid: "to wit" at Salem, in the county of Salem aforesaid, to the damage of the said plaintiff, of five thousand dollars, and therefore he brings suit, &c.

R. P. THOMPSON, Atty. for Plaintiff.

To this declaration, the defendants demurred generally:—at September Term, A. D. 1837 the Supreme Court after argu-

ment, overruled the demurrer, and at November Term, 1837, gave leave to defendants, to plead: See 1 *Har.* 266.

The defendants, thereupon filed the following.

## PLEAS.

And the said defendants, by W. N. Jeffers, their attorney, come and defend the wrong and injury, when &c. and say that they are not guilty, nor is either of them guilty of the supposed grievances above laid to their charge, or any or either of them, or any part thereof, in manner and form &c. and of this, they put themselves, &c.

And for a further plea in this behalf, the said defendants by leave of the Court here, for this purpose first had and obtained according to the form of the statute, in such case made and provided, say, that the said plaintiff ought not to have or maintain his aforesaid action thereof against them, because they say that by an act of Council and General Assembly of the State of New-Jersey, at a session holden in Trenton in the said State, on the sixth day of November A. D. 1818, and then and there possessing all the powers of legislation of the said State, under and by virtue of the Constitution of said State, passed an act entitled "An act to authorize John Denn of the county of Salem, to shorten the navigation of Salem Creek, by cutting a canal, which said act is in the words following, that is to say:

"*Sec.* 1.    Be it enacted, &c. That John Denn, of the township of Mannington, in the county of Salem, be and he is hereby authorized to cut a canal to shorten the navigation of Salem Creek, beginning at Salem Creek in the township of Lower Penns Neck, on the line between the said John Denn's land, and the land of David Ware, and to run on the course of the said line, about South, six degrees west, until the said canal strikes the said creek, and empties into the same.

"*Sec.* 2.    That the said canal shall be cut wholly upon the land of the said John Denn, and shall be of the breadth of at least twenty-two feet at the top, and of a sufficient width at the bottom, and of a sufficient depth of water throughout, for the free passage of all vessels navigating said Salem Creek; and shall

after the same is so cut and opened, be at all times afterwards, a public highway, and be kept open for the passage of such vessels as navigate the said Creek, at the sole and proper expense of the said John Denn, his heirs and assigns forever ; and the said John Denn, his heirs and assigns, are hereby bound accordingly.

"*Sec.* 3. That when the said John Denn shall have opened and completed the said canal, and shall have obtained a certificate from the Chosen Freeholders of the townships of Mannington and Lower Penns Neck, or a majority of them, that the same is completed and sufficient for the purposes aforesaid, and which certificate shall be first filed in the Clerk's office of the said county of Salem, it shall and may be lawful for the said John Denn, his heirs and assigns to build a bridge over the said Salem Creek, for the accommodation of himself, his heirs and assigns, opposite the mansion house of the said John Denn : provided that any land to be occupied in the construction thereof, be the proper land of the said John Denn, his heirs or assigns ; and that the said Creek shall not be contracted by the abutments on each side, so as to injure or obstruct the navigation of said Creek, and that the said John Denn shall place in the same, a good and sufficient draw at least twenty-two feet wide, and shall at all times himself, his heirs and assigns, support and maintain the said bridge and draw, at his and their proper cost and charges.

"*Sec.* 4. That if any person or persons shall in any manner obstruct the digging of the said canal, or fill up the same, or any part thereof, or obstruct the free passage of the water through the same, in any manner, or injure the bank or banks thereof, or shall do injury to the bridge to be erected over said creek, or the draw or abutments thereof, any person or persons so offending, shall on conviction thereof, forfeit and pay for every such offence, the sum of one hundred dollars, unto the said John Denn, his heirs or assigns, to be sued for and recovered in action of debt, in any Court, having competent jurisdiction thereof.

"*Sec.* 5. That when the said canal shall be completely finished and made navigable for vessels as aforesaid, and shall be used and found sufficient, for the space of three years after being first used, it shall be lawful for the said John Denn, his heirs or assigns, to stop the said creek at the place where the said bridge

shall have been erected, from which time, the liability of the said John Denn, his heirs and assigns to keep up and maintain such bridge and draw, shall cease."

And these defendants aver, that the said John Denn, named in the said act above recited, did dig, make, and cut a canal to shorten the navigation of Salem Creek, beginning at Salem Creek, in the township of Lower Penns Neck, on the line between the said John Denn's land and land of David Ware, which canal runs on the course of the said line, about South six degrees west, until the said canal strikes the said Creek, and empties into the same; and the said John Denn cut the said canal wholly upon the land of the said John Denn, and the breadth thereof was at least twenty-two feet at the top, and of a sufficient width at the bottom, and of depth of water throughout for the free passage of all vessels navigating the said Salem Creek; and the said canal hath at all times since the same hath been opened, been a public highway, and hath been kept open at least of the said width, and of sufficient depth as aforesaid, for the passage of such vessels as navigate the said Creek, at the sole and proper expense of the said John Denn and his assigns; and the said John Denn having completed the said canal, obtained a certificate from the Chosen Freeholders of the townships of Mannington and Lower Penns Neck, or a majority of them, that the same was completed and sufficient for the purposes aforesaid; which said certificate was duly filed in the Clerk's office of the said county of Salem, agreeably to the directions of the said act; after which filing of the said certificate, the said John Denn did erect and build a bridge over the said Salem Creek, for the accommodation of himself, his heirs and assigns, opposite the mansion house of the said John Denn; the land occupied in the construction thereof, being the proper lands of the said John Denn: and these defendants further aver, that in the construction of the said bridge, the said creek was not contracted by the abutments on each side, so as to injure or obstruct the navigation of said Creek; and the said John Denn placed in the said bridge, a good and sufficient draw at least twenty-two feet wide: and the said John Denn, his heirs and assigns have at all times, maintained the said bridge and draw, at his and their proper costs and charges.

And these defendants further aver, that the said John Denn, having completely finished the said canal, and made the same navigable for vessels, agreeably to the requirements of the said act, and the same having been used and found sufficient for the space of more than three years after having been first used, the said John Denn erected the said dam, and stopped the said Creek, at the place where the said bridge hath been erected : and these defendants further aver, that on the seventeenth day of April, A. D. 1834, the said Isaac Johnson, one of these defendants, purchased of the said John Denn, all the right, title, property, claim and demand of the said John Denn in and unto the said land and premises, on each side of the aforesaid bridge, and in and unto the said bridge, dam, stopping and privileges of the said John Denn in and unto the same, as granted by the said act of the Council and General Assembly as aforesaid, by deed of conveyance of the purport following to wit :.

(See copy of Deed marked A.)

And on the 29th day of January, in the year 1835, the said Isaac Johnson did convey to the said William Johnson, the other defendant the one moiety or half part of all and singular the said premises, bridge, dam, stopping and privileges, as by reference to the said several deeds of conveyance the same will more fully and at large appear :

And the said defendants further aver, that being the assignees of the said John Denn, as aforesaid, they entered upon, raised and anew erected the said dam, as lawfully they might do, and this the said defendants are ready to verify, wherefore they pray judgment if the said plaintiff ought to have or maintain his aforesaid action thereof against them.

## DEMURRER.

And the said John Sinnickson as to the plea of the defendants, by them first above pleaded, prays that the same may be inquired of by the country, and the said defendants do so likewise.

And the said John Sinnickson, as to the plea of the said defendants, by them secondly above pleaded, saith that the same and the matters therein contained in manner and form as the same are above pleaded and set forth, are not sufficient in law to bar or preclude him the said John Sinnickson from having and

maintaining his aforesaid action thereof against them the said defendants ; and that he is not bound by the law of the land, to answer the same, and this, he the said plaintiff is ready to verify. Wherefore for want of a sufficient plea in this behalf, he the said John Sinnickson prays judgment, and his damages by him sustained on occasion of the committing of the said grievances, to be adjudged to him &c.

Joinder by defendants.

R. P. THOMPSON, for Plaintiff. This action was brought to recover damages for the overflow of a body of meadow land, caused by the erection of a dam of mud, timber and stone, by the defendants, across Salem Creek in the county of Salem, at "Denn's Bridge."

The defendants first demurred to the plaintiff's declaration. After argument the Supreme Court overruled the demurrer, and gave leave to defendants to plead. 1 *Harr.* 266.

The defendants then plead,

1, The general issue.

2, Special plea justifying the overflow and all damages, under an act of the legislature of New-Jersey, entitled " An act to authorize John Denn of the county of Salem, to shorten the navigation of Salem Creek, by cutting a canal ;" *passed, November* 6, 1818. See *private acts of* 1818—19, *p.* 5.

This act of 1818, authorizes John Denn or his assigns, (after having performed certain conditions specified therein) " to stop the said Creek, at the place where the Bridge shall have been erected." The defendants purchased of John Denn, all his rights and privileges under this law, and, as " his assigns," have stopped Salem Creek, and now claim protection from all the ruinous consequences which have resulted to the plaintiff, under this act of the legislature.

The plaintiff demurs to the special plea, and the question to be settled by the court is, whether the act of the legislature can protect the defendants for the injuries caused by the erection of the dam, to the meadows of the plaintiff ?

It is to be remarked in the outset of the argument, that the act above specified, does not provide any mode by which the damages done to individuals by the erection of the dam, may be ascertained and paid.

The plaintiff, then, admits that the act of the legislature protects the defendants from indictment or prosecution at the instance of the public—but can afford them none other or further protection.

In the case of *Bassett, Sinnickson and Sinnickson* v. *the same defendants*, in the court of Chancery, on application for an injunction, Chancellor Vroom says, " The act of 1818 authorizing the stopping of the Salem Creek, which is a public highway, protects the defendants against all prosecutions and indictments at the suit of the public, but does not protect them against the claims of individuals, for injury done to private property. Private rights are not considered as taken away by the act. If private property is injured, the defendants are liable to respond in damages, if about to be destroyed, the owners are entitled to the preventive remedy of this Court."

*Opinion of Ex. Ch. Vroom*, (MS.)

In *Angell on tide waters*, page 27, it is remarked " It is an incontrovertible principle, that private rights shall not be infringed, without a satisfaction being made to the parties injured."

It is a well established principle of natural equity, that private rights are not to be impaired by the authority of a State, unless a recompense is provided. *Angell on water courses*, 53—54.

The public is considered as an individual treating with an individual for exchange : all that the legislature does, is to oblige the owner to alienate his possessions for a reasonable price, and even this is an execution of power which the legislature indulges with caution, and which nothing but the legislature can perform. 1 *Black. Com.* 139.

Private interests must sometimes yield to public good, but only where a fair and just equivalent is awarded to the owner of property taken. *The People* v. *Platt*, 17 *Johns.* 195.

These cases have been cited to show that even for useful *public purposes*, no man's property could be taken without compensation—how much stronger is the case before the Court, where the defendants, under the idle pretence of shortening the navigation, have by the stopping of Salem Creek, created a water power which is to make the *private* fortunes of the defendants :—the property of the plaintiff is destroyed that the private interests of the defendants may be enhanced ; and this without the recompense of a farthing.

The same principle may be found in 2 *Johns. Ch. cases*, 162; and in 2 *Kent's Comm.* 339. But the legislature never intended, by that act, to interfere with or divest any private rights: they granted the power, to be used at the peril of those who exercised it, and with the tacit understanding " *sic utere tuo ut non alienum lœdas.*"

In the Chancery case before cited, Chancellor Vroom says, " But the true answer is, that the legislature never intended to give a right which in its exercise, should do irreparable injury to private property."

But if the legislature did so intend, the following cases will show they had no power to enforce their intent.

In *Stevens* v. *The Middlesex canal*, 12 *Mass. Rep.* 466, it was held, " That if no means of indemnification are afforded by the legislature, for the injurious but necessary effect of making a canal, those who suffer from it, may maintain an action at common law, for the recovery of damages."

In *Angell on Water Courses*, 65, " A license from a town, to erect a mill dam which overflows the adjacent land, is no justification in an action for a private nuisance."

In *same book*, 60, is some ancient lore in point; " When Ariarthes King of Cappadocia dammed up the passage of the river Melanes, whereby the lands of the Gallatians and Phrygians were damnified, he was adjudged by the Romans, (to whom the case was referred) to pay three hundred talents : *et seq.*

I refer again to the able and conclusive opinion of Chancellor Vroom, in the case in Chancery, and on this point he says,

" If in the erection of this dam, or stopping of the water, injury is done to private property, *the defendants are answerable in damages to the party injured.* It cannot be supposed that the legislature in authorizing the construction mainly, if not entirely, for private accommodation and benefit, intended to exempt the grantee or his assigns from all legal liabilities. Such a proposition could meet with no favor *at the hands of any Court,* and least of all, from a Court of conscience!"

Nor is this all—so " incontrovertible" was that principle considered, that we are told by the Chancellor, " that the defendants counsel (Mr. Jeffers) distinctly and properly admitted, that the right of any person who might be injured, to such damages by

way of compensation in a Court of law, was not, and could not, be taken away by the act under which the defendants' claim their rights." *Opinion of Ex. Ch. Vroom, MS. page* 8.

I cannot in " defining the position of defendants counsel, do otherwise than suppose he was then in a Court of conscience."

In *Crittenden* v. *Wilson*, 5 *Cowen's Rep.* 165. This was an action for a private injury, occasioned by the building of a dam over the Ostelic river, under an act of the legislature of New York; the Court held the defendant liable for all the injury caused by it, to others:

In 2 *Johns. Chanc. cases*, 162, *Gardner* v. *Trustees of Newburgh*. " The legislature had authorized the Trustees, to supply the town with water by means of conduits, but had made no provision in the act, for indemnifying the owners of land, for injuries sustained, and the Court of Chancery granted an injunction, until compensation was provided, and held that the party injured, had his remedy at law for his damages."

In *Steele* v. *Western Inland Lock Navigation Company*, 2 *Johns. Rep.* 283. This is a case where the plaintiff sued for two causes. 1. For the overflowing her land; in consequence of leaks in the banks of the canal. 2. For damages done by cutting the canal through her land. The defendants set up an act of the legislature of New-York, as a justification. By the act, provision was made for the payment of damages; the Court held that plaintiff could not recover for the injury by cutting the canal, but for the overflow of the land, she might—and the reason assigned is, that for the *former*, provision is made in the act, but not for the *latter* injury.

In *Sutton* v. *Clark*, 6 *Taunt. Rep.* 44, the Court held that where the act is done for private emolument, a party injured may recover damages, at Common Law.

In the case of *Bonaparte* v. *The Camden and Amboy Rail Road Company*, 1 *Bald. Rep.* 226, are the following principles in point:

" It is not intended to lay down the broad proposition that it is indispensable that the law should contain a provision for compensation, or prescribe the mode of making it. Though the law may be silent on this subject, yet if compensation is actually made in any way, or if the legislature should by a subsequent law, direct it to be done, the law would be valid; but before this

is done, the execution of any authority which the law might profess to give, to take possession of private property, would be enjoined : for the right of the owner to receive, and the duty of the legislature to provide compensation, is absolute; and the rights of property cannot be taken without an equivalent."

In *Gridley* v. *Flood*, 6 *Hals. Rep.* 292, it is held, " that the proprietor of the land, is not precluded from his remedy, by action for damages, if no appraisement is made."

In the case above referred to, of *Bonaparte* v. *the Camden and Amboy Rail Road Company*, page 227, Justice Baldwin, in referring to a case in 2 *Peters*, 526, involving the same point, says, " on this authority, we should have no hesitation in enjoining the execution of the law, if it provided no compensation, without declaring it void, &c." And again, " we should feel it our duty to go further than to enjoin till the owner should have an opportunity of seeking and obtaining compensation ; and we would continue the injunction, till the company had made the compensation, *without imposing any burthen of seeking or pursuing any remedy*, or leaving him exposed to any risk or expense in obtaining it. *et. seq.*

In 12 *Mass. Rep.* 468, " If a legislature should authorize any improvement, the execution of which should destroy private property, without at the same time affording means of relief and indemnification, the owner of the property destroyed, would undoubtedly have his action at Common Law, for damages."

Upon the authority of these cases, the plaintiff's counsel submits the case to the judgment of Court, without reply to defendants' argument.

*W. N. Jeffers* for the Defendants. The defendants rely upon the act of the legislature as a justification. This is a law without any provision or indemnification upon the face of it, for injuries which may result to individuals, by carrying it into execution. Had the legislature a right to pass this law? Is the law good or void? If good, it is a justification, if void, it is no protection, 2 *Pet.* 245.

1, As to the right of the legislature to pass this act. The State of New-Jersey is a free, sovereign and independent State. She has all the attributes of sovereign power. The article of confederation was a league of sovereign powers for purposes of

defence and war.   The Constitution of the Union takes nothing from this sovereignty.   The limitation, or prohibition to exercise certain powers of sovereignty, by common consent, does not affect the inherent power.

The legislature of New-Jersey under these limitations, is as the power of the British Parliament.   The power of parliament is without limit, 5 *Com. Dig.* 220, *H.*   The power of our legislature is equal to this.   We have no Bill of Rights.   Our constitution imposes no restraint.   This transcendent power of legislation devolved upon all the States, at the close of the revolution, subject only to the limitation which the people imposed in their constitution and bill of Right, 1 *Bald.* 220, 226 ; 4 *Wheaton*, 518, 547, 552 ; 8 *Wheaton*, 584 ; 2 *Pet.* 408, 414, 656 ; 2 *Kent. Com.* 338 ; 2 *Halst.* 292.

The legislature having a right to pass this law.   Application for redress must be made to the legislature.   While on the one hand, the legislature has power to take private property for public use ; compensation must be made.   It is an inherent act of sovereignty, which gives the right to take, and imposes the obligation to make compensation, which flows from its paternal duty and sense of natural equity.   As the legislature, in the exercise of its transcendent power, may take private property for public use, the application for redress must be to the same power, that it may point out the measure of compensation, and mode of trial, 1 *Bald.* 226 ; 2 *Pet.* 245.   The taking private property or divesting private rights, is no violation of the constitution, 1 *Bald.* 220, 221 ; 2 *Pet.* 412, 13.

This law was passed for public benefit.   The object is to improve the paramount right of navigation.   This was an arm of the sea, it belonged to the sovereign power of the state.   1 *Harr. Law. Trac.* 6, 17.   The government wished to improve it ; such is the title of the act.   Public necessity demands my property, or my life in case of war : the supreme power has a right to both, and I must yield them up.   The supreme power is to judge when public necessity demands a surrender of private property, and the making of the law, is a declaration upon the subject.   *Vatt.* 112 ; *Ruth.* 42, 43, 272, 34 ; *Bull.* 150 ; *Puff.* 829 ; *Gro.* 393 ; 17 *John. R.* 215.

This may be said to be "An act to contract with John Denn,

to improve the navigation of Salem Creek, for the benefit of the State." It is declared a public highway. This law is a solemn CONTRACT between the State of New-Jersey, and John Denn, and his assignees. It was the legislature, or sovereign power treating with an individual, for property. 1 *Black.* 139.

These defendants are grantees of the State, and while they keep *within the grant*, they are protected. The legislature cannot alter, repeal or change this contract. Can it be done then through the judicial power of this State? a power subordinate to the high and transcendent power of the legislature. If these defendants were contractors, the law would be a justification. 20 *John.* 737, 745 ; 1 *Bald.* 74 ; 4 *Term Rep.* 796. It is not the defendants who have injured the plaintiff, it is the legislature— it is the high paternal sovereign power—for public use and under public necessity.

No action lies in this case. The temporary occupation of property, by or under the authority of the supreme power, does not justify an action. 20 *John. R.* 737, 745 ; 1 *Bald.* 226 ; 6 *Halst.* 292 ; 4 *Wash. C. C. R.* 606.- The laws of New-Jersey concerning Roads, takes away the occupation of property, and depends upon the same principle.

DAYTON, J. The declaration complains of the defendants for an injury done to their meadows by reason of the erection and continuance of a dam over Salem Creek. The defendants plead as a justification, that said dam was erected and continued by virtue of an act of the legislature of this state, entitled, "An act to authorize John Denn, of the county of Salem, to shorten the navigation of Salem Creek, by cutting a canal," *passed November* 6, 1818. All which is set out with proper averments. To this plea, the plaintiff has demurred, and the defendants have filed a joinder.

The act in question, (*Pampl. L. of* 1818, p. 5.) enacts substantially as follows :—

*Sec.* 1. That John Denn be authorized to cut the canal, as therein prescribed.

*Sec.* 2. That the canal shall be cut wholly on the land of said Denn, at least twenty-two feet broad at the top and of sufficient width at the bottom, and depth of water for all vessels naviga-

ting said Creek; and shall when cut and opened, be at all times afterward a public highway, and be kept open at least of the depth and width aforesaid, at the sole expense of said Denn, his heirs and assigns.

*Sec.* 3. That when said Denn shall have completed the canal, as is directed, and obtained a certificate thereof from the Chosen Freeholders of the townships of Mannington and Lower Penns Neck, or a majority of them, and filed the same in the Clerks office of the county of Salem,) "it shall and may be lawful for the said John Denn, his heirs and assigns to build a bridge over the said Salem Creek, *for the accommodation of himself, his heirs and assigns,* opposite the mansion house of the said John Denn," provided that the land to be occupied in its construction, be his own, and that he do not by its abutments, contract the creek so as to injure the navigation; and do put a draw in the same, at least twenty-two feet wide, and that he, his heirs and assigns, maintain said bridge and draw, at their own cost and charges.

*Sec.* 4. That any person who shall obstruct the digging of the canal, &c. or injure the bridge, &c. shall forfeit one hundred dollars, to said Denn, his heirs and assigns.

*Sec.* 5. That when the canal shall have been completely finished, and made navigable for vessels as aforesaid, and shall be used and found sufficient for the space of three years after being first used, "it shall and may be lawful for the said Denn, his heirs or assigns, to stop the creek at the place where the said bridge may have been erected;" from which time, his liability to maintain the bridge and draw shall cease.

The point presented by the demurrer, is this: does the above act exonerate John Denn, his heirs and assigns, from the payment of damages done to individuals, by stoppage of the creek? Great care has been used by the legislature, in providing another navigable highway for the public, in lieu of that which was authorized to be stopped up. So too, the legislature have provided against all damages (which could be anticipated) to private rights. John Denn was to use no one's land but his own, and everything was to be done at his individual expense. But although I think it plain that the legislature never intended to injure private rights, yet the unforeseen result is otherwise. The meadows in question,

are admitted by the state of the pleadings, to have been damnified by the stoppage of this creek ; and yet the statute which authorizes the act, has not provided compensation for the injury. The constitutionality of the law is not now questioned ; but it is insisted that the Common law right of the plaintiff to recover damages, is in full force. And in this position, I think, the plaintiff is right.

It is a well settled rule, that statutes in derogation of common law rights, are to be strictly construed ; and we are not to infer that the legislature intended to alter the common law principles, otherwise than is clearly expressed. 11 *Mod.* 149.

Chancellor Vroom, in an opinion delivered in the term of August, 1835, in reference to another branch of the same subject matter, which is now before us, laid down the position distinctly, that the act in question, does not exempt him who does an injury, from damages; which opinion, thus far, the counsel contend, is not law.

But the question whether a party who has acted in pursuance of a statute, is protected from damages, where the statute itself is silent, has been before some at least, of our most respectable state courts. In the case of *Gardner* v. *the Trustees of Newburgh, et al.* 2. *J. C. C.* 162, a company had been chartered to supply the town of Newburgh, with pure water, but were restrained by injunction, from diverting a water course, as authorized by the statute, until compensation was made to the owners of the land through which it run, although the act made no provision for such compensation to *them ;* and Kent Ch. observed, that the owner of the lands " would be entitled to his action at law, for the interruption of his right, and all his remedies at law, and in that Court, remained equally in force."

The case of *Crittenden* v. *Wilson,* 5 *Cowen,* 166. is in point. In this case, the Court held that the right of the legislature to grant the privilege of making a dam over the Otselic river, which was a public highway, was too clear to be disputed, but the grantee took it subject to the restriction, *sic utere tuo, ut alienum non lædas.* That if no provision for the payment of damages done to individuals, by reason of the dam, had been made by statute, the defendant would still be liable to pay them.

It is true that in *Rodgers* v. *Bradshaw,* 20 *J. R.* 735, it is inti-

mated that an exception to this rule may exist in the case of public commissioners acting under direction of the statute, as the direct agents of the State in the execution of a great public improvement, and not as volunteers for their own benefit.

In the case of *Stephens* v. *Proprietors of the Middlesex Canal*, 12 *Mass. R.* 466, it is said that should the legislature authorize an improvement (as cutting a canal) the execution of which would require or produce the destruction, or diminution of private property, without at the same time giving relief, the owner would undoubtedly have his action at Common law for damages.

These authorities would appear to cover and rule the present case. But it was contended by counsel, that they were decided upon their respective States' Bills of rights, which declare that private property shall not be taken for public use, without just compensation, and that as our constitution contains no such limit or restriction, the cases have no application, or in other words, that the legislature of New-Jersey being unrestricted by constitutional provisions, is omnipotent, and may take private property for public use, without compensation, whenever it shall will to do so.

The right to take private property for public use, does not depend on constitutional provisions, but is one of the attributes of sovereign power ; and the constitution of the United States recognizes it as such, when it says, the right shall not be exercised without just compensation. This power to take private property reaches back of all constitutional provisions ; and it seems to have been considered a settled principle of universal law, that the right to compensation, is an incident to the exercise of that power : that the one is so inseparably connected with the other, that they may be said to exist not as separate and distinct principles, but as parts of one and the same principle ; *Puffendorf, b.* 8. *Ch.* 5, *p.* 222 ; 2 *Montesquieu, Ch.* 15, *p.* 200 ; *Vattel,* 112, 113 ; 1 *Black. C.* 139 ; 2 *Kent, C.* 339, 340 ; 2 *J. C. C.* 168 ; 1 *Peter's Com. R.* 99, 111 ; 3 *Story's Com.* on Constitution, 661 ; *Bonaparte* v. *Camden and Amboy Rail Road Company, Bald. R.* 220. The language of Judge Baldwin in the case last cited, is " the obligation " to (make compensation), " attaches to the exercise of the power " (to take the property,) " though it is not provided for by the State Constitution, or that of the United States had not injoined it."

And Story, calls the provision on this subject, in the constitution of the United States, merely "an affirmance of a great doctrine established by the common law." This principle of public law, has been made by express enactment, a part of the Constitution of the United States ; (*vid* 5th amendment,) but it has been decided that as a *constitutional* provision, it does not apply to the several States, *Barron* v. *Mayor of Baltimore*, 7 *Peters*, 247 ; *Livingston's Lessee* v. *Moore*, 7 *Peters*, 551, 2. Still if the opinions of the above distinguished jurists be correct, it is operative as a principle of universal law ; and the legislature of this State, can no more take private property for public use, without just compensation, than if this restraining principle were incorporated into, and made part of its State Constitution. I have felt it a duty to notice this point, thus far, because of its interest and importance in the abstract, and of the great reliance placed upon it in the argument of the counsel, though I scarcely considered it necessary for the settlement of this case, to pronounce upon it a definite opinion.

According to my understanding of the act in question, the legislature neither intended to take, nor has it taken, private property for public use, in the sense in which these terms are properly to be understood. *For the accommodation of John Denn, they authorized him (if he thought it proper so to do,)* to stop up a navigable creek, upon condition that he cut a canal at his own expense and upon his own property, as a highway for the public, in lieu of the creek. By the terms of the act, therefore, I think, the legislature has manifested a clear intent to provide against any interference with private property. It merely agreed to give up its right of passage upon the creek, (or in other words, its public property there) for another right of passage equally or more valuable, to be provided by John Denn. The damages which have accrued to the meadow owners, have not arisen from cutting the canal, which in one sense, was for the benefit of the public, but *by the stoppage of the creek, which was for the individual benefit, or private emolument of John Denn.*

The case therefore, is not within the principle laid down in 4 *Durn. & E.* 796, and *Sutton* v. *Clark*, 6 *Taunt.* 29, 41, where it was held that public officers acting under the authority of an act of Parliament, in repairing public streets, were not answerable for

damages, unless they were guilty of an excess of jurisdiction; that the maxim applied, " *salus populi, suprema est lex*," and that if no satisfaction were given by the act of Parliament, the party was without remedy. It is not therefore necessary to enquire whether or not these cases conflict in principle with those already cited. Gibbs, C. J. in *Sutton* v. *Clark*, carefully distinguishes the case of a public officer, who is bound to execute a duty imposed on him by statute, from that of a mere volunteer, who acts not for public purposes, but private emolument. I think it can hardly be pretended, that John Denn, stopped Salem creek for public purposes under any *obligatory* directions of the statute. So far from this, it is evident on the face of the act, that it was done voluntarily and for his own accommodation. The most that can be said for him is, that by cutting the canal, he paid a consideration to the public, for the privilege of doing so.

The powers given by the act to John Denn, are such only as he would have had, if the creek in question had been his own. He can build his bridge over it, or dam it up, at his pleasure, and his bridge or dam cannot be complained of *by the public, as a nuisance;* but if in exercising his rights, he damnifies the property of his neighbors, he is liable, like every other citizen, to respond in damages to the amount of the injury.

*Judgment must be entered for the Plaintiff on demurrer, with costs.*

NEVIUS, J. The declaration in this case sets forth that the plaintiff was seized in fee on the first day of July 1835, of several tracts of meadow land, containing together one hundred and thirty acres more or less, situate in the township of Lower Penns Neck in the county of Salem, adjoining an ancient stream of water called Salem Creek, the water of which from time immemorial has and still ought to run in its ancient and usual channel along said lands without obstruction. That the defendants, meaning to injure the plaintiff in the enjoyment of his said lands, and to deprive him of the profits arising therefrom, on the day aforesaid, did raise and build anew, a dam across said creek, without the plaintiff's license, and below his said lands, and have continued the same, and so obstructed, heightened and impeded

the flow of said stream, that afterwards, on the day aforesaid, and on divers other days between that day and the 18th of June 1836, the waters of said creek did not run off or subside low enough to let the rain water and other water run off said lands, out of the sluices and water works of said lands, as formerly, before the said dam was erected; but by reason of said dam, the flow of the water in said creek prevented the water in the ditches and drains on said lands from running off and draining the same as before, and that by means of said dam the said lands have been and are overflowed, and the herbage and grass thereon drowned and destroyed, and rushes and worthless grasses, and noxious weeds, by reason thereof, have grown up and spread over the said lands, and the same rendered useless and unproductive, and impassable for men and cattle and teams, and the ditches and drains filled up and rendered useless, by means of which, the plaintiff is injured and aggrieved, and sustained loss, in his said lands and is deprived of the benefit and advantage he was accustomed to have from them, before the erection of said dam, and has sustained damages to the amount of five thousand dollars.

To this declaration, the substance of which is above stated, the defendants have pleaded

1st. The general issue.

2nd. That by an act of the Legislature of New Jersey, passed the 6th day of November, 1818, entitled "an act to authorize John Denn of the county of Salem to shorten the navigation of Salem Creek, by cutting a canal. It was enacted (setting forth the act in full) in substance as follows, viz. That John Denn be and hereby is authorized to cut a canal to shorten the navigation of Salem Creek, describing the course of such canal to be on the line between John Denn's land and the land of David Ware.

2nd. That it shall be wholly upon the land of John Denn, and 22 feet in width at the top, and of sufficient width at the bottom, and sufficient depth of water throughout, for the free passage of all vessels navigating the said Salem Creek; and shall be a public highway and kept open of the depth and width aforesaid, at the sole expense of John Denn, his heirs and assigns forever, and he and his heirs are bound accordingly.

3d. When the canal is opened and completed, and John

Denn has obtained a certificate of the Chosen Freeholders, or a majority of them of the townships of Mannington and Lower Penn's Neck, that the same is completed and sufficient for the purposes aforesaid, it should be lawful for the said John Denn, his heirs and assigns, to build a bridge over Salem Creek opposite his own mansion house, for the accommodation of him, his heirs and assigns; provided it be upon his own lands, and have a sufficient draw so as not to obstruct the navigation of said creek, and that he, his heirs and assigns should always maintain said bridge at his and their own costs and charges.

4th. That any person obstructing the construction of said canal, or injuring its banks, or the bridge or draw, should forfeit to the said John Denn, his heirs or assigns one hundred dollars.

5th. That when the canal should be finished and made navigable and shall be used and found sufficient for the space of three years after being first used, it shall be lawful for the said John Denn, his heirs and assigns to stop the said creek at the place where the said bridge shall have been erected, and from that time, their liability to keep up said bridge and draw shall cease.

The plea then proceeds to aver that John Denn, named in the said act, cut the said canal to shorten the navigation of Salem creek, and that the same was constructed in the place and manner directed and required by said act, and has at all times since been a public highway and kept open according to the requirements of said act, at the expense of him the said John Denn and his assigns. And that having completed said canal, he obtained the required certificate, which was filed according to law, after which he erected a bridge at the place, and of the description required by said act, and for the purpose named in said act.

And it further avers that the said John Denn having finished the said canal, and made it navigable agreeably to said act, and the same having been used and found sufficient for more than three years after having been first used, he, the said John Denn, erected the said dam and stopped the creek at the place where said bridge had been erected.

And it further avers that on the 17th of April, 1834, Isaac Johnson, one of the defendants, purchased of John Denn, all his

right, title, property, claim and demand in and unto the said lands on each side of the said bridge, and in and unto the bridge, dam, stopping and privileges as granted by the said act, by deed of conveyance (which is set out in said plea) and that on the 29th of January, 1835, Isaac Johnson conveyed the one moiety thereof to William Johnson, the other defendant ; and that the said defendants being the assignees of the said John Denn as aforesaid, entered upon and raised and new erected the said dam as lawfully they might do, and this they are ready to verify, &c.

To this plea, the plaintiff has filed a general demurrer, and insists that the same constitutes no legal answer or defence to the cause of action set forth in his declaration.   The defendants by this plea do not deny the injury complained of by the plaintiff, but justify their own acts under the authority of the legislature, as contained in the act of 1818, and insist that they are not responsible for such injury.   The demurrer admits the truth of the matters alleged by the plea, and denies that they constitute a justification or defence of the acts complained of.

The character of this act of the legislature by which John Denn was authorized to construct this canal, becomes the first subject of inquiry.   Is it a public act and designed exclusively to promote the interest and convenience and welfare of the public, and was this authority vested in John Denn as an agent on the part of New Jersey, to carry into effect an object of public interest or importance ?   Or is it to be considered as a mere private act, designed to secure or advance, or protect the private interest of John Denn, his heirs or assigns ; or is it to be esteemed as an act designed for private purposes, whilst at the same time it might incidentally promote the public interest.   A correct answer to these questions, may and will have an important bearing upon the decision of the case.   If the statute is wholly of a public character, and designed exclusively for the public welfare, and John Denn is to be esteemed as the agent of the Government, employed under this act to effect in the name and for the use of the State, a public improvement wholly distinct from any private interest, I cannot doubt but that the plea is a complete answer to the complaint in the declaration.   Where the State authorizes an act to be done exclusively for the public interest, and appoints an agent to execute that act, and such agent

shall act within the scope of his authority, he cannot be person-
ally responsible to individuals for the consequences of executing
his commission. Should private property be necessarily and un-
avoidably injured, taken away or destroyed by the execution of
such trust, without any compensation provided in the act itself,
the remedy can only be by contesting the constitutionality of the
law, or appealing to the justice and magnanimity of the legisla-
turer. But if the statute has provided a mode of compensation
in such case, the party injured must resort to that and cannot
pursue his common law remedy, by resorting to a suit at law.
In support of these general positions, I refer to the case of *Rog-
ers* v. *Bradshaw*, 20th *John. R.* 735, decided upon a very conclu-
sive argument in the Court of Errors of New York. And also,
to the case of *Calkins and others* v. *Baldwin*, reported in *4th
Wendell* 667, and the case of *Steele* v. *Prest. &c. Western Inland
Lock Navigation Company*, 2 *Johns.* 283; and also to the
case reported in 4 *Taun.* 44.

But if on the other hand, the act of the legislature is to be con-
sidered of a private character, designed to confer upon John
Denn exclusive privileges for his own private and individual in-
terest and convenience, and if the act itself in no wise violates any
constitutional provision, and does not in terms provide compensa-
tion for private property that may be taken, injured, or destroy-
ed, the same not having been foreseen : John Denn or his assigns
must execute that act at their peril and must respond for all con-
sequences that may result from it to private property. *See Crit-
tenden* v. *Wilson*, 5 *Cowen*, 165. And why should it not be so ?
The legislature cannot take private property for public purpo-
ses without compensation, much less can they take it for pri-
vate purposes, or take the property of one citizen and give it
to another. I refer also, to the opinion of *Chan. Vroom*, ren-
dered in a case between the same parties, where this question
was distinctly raised, and underwent a full examination. In the
present case, if the design of the legislature was to confer
upon John Denn, his heirs and assigns, a personal and private
privilege, for his own exclusive use and interest, he can pro-
tect himself by virtue of such act, only against any public com-
plaint. It may be lawful for him and his assignees, to execute
this act, so far as the public interests, the rights of navigation,
fishing, &c. are concerned, and he may plead, and successfully

plead the act, to any indictment for a nuisance, or against any complaint for an infringment of a public right, but cannot plead it as a justification for a private injury, which may result from the execution of the statute.

Or again, if it is to be esteemed an act to promote the interest of John Denn whilst the execution of it may incidentally advance the public interest, I apprehend the same construction is to be given to it as in the latter case. And the defendants are to be answerable to the same extent for any consequences resulting from the execution of the act as if it was wholly a private act.

Upon examining this act I cannot view it in any other light than a private act and intended for the benefit of John Denn. He seeks the privilege of erecting a dam across a navigable stream, and the legislature having the constitutional right to grant such privilege, (see *Wilson et al* v. *The Black-bird Creek Marsh Company.* 2 *Peters*, 245) do grant it and impose upon him certain terms, among others that he shall construct a canal to answer the purposes of navigation. It is to be of sufficient depth and width to admit the passage of such vessels as were used to navigate this creek. It was to be constructed upon his own land and at his own expense, and forever to be kept in repair at his own cost, to be fairly tested and tried, before the grant to him to erect a dam, should become complete and absolute. Nor was it made incumbent on him to construct this canal. After the passage of the act it was entirely optional with him whether he would construct it or not. It was not made obligatory except he availed himself of the benefit of the grant, by the erection of the dam. In all these particulars, the act bears no resemblance to a public act. It would seem to have been induced by the application of John Denn himself, and in its passage, the legislature seem only to have been careful to protect the public interests. The construction of this canal was a permission and not a direction or obligation imposed upon the grantee; it was an authority to do it, not a requirement. Nor does the language used in the title and in the first section of the act " To shorten the navigation of Salem creek," at all change its character. It was essentially and to all intents and purposes a private act and designed for the benefit of John Denn and only induced by the consideration that it might not be injurious to public interest, but that the public interest might thereby be incidentally promoted.

Does this act then confer upon John Denn and his assigns, the right to take, injure or destroy private property, without compensation to the owners. If it does, it is unconstitutional and void, and in violation of natural justice, and therefore would not be a defence to the plaintiff's claim. If it does not confer such right, it constitutes no justification, and the plea cannot therefore be sustained. The legislature are to be considered as conferring nothing but what they had a constitutional right to grant. They could not grant to him the right to overflow the land of the plaintiff, or in any other way to injure or destroy it without compensation, and if no such compensation is provided for, the plaintiff has a right to seek his remedy through courts of justice by suit. It is no answer to say that the party injured must or may resort to the justice of the legislature. If such be his only remedy, it is of too vague, indefinite and uncertain a character to be recognized by courts. The constitution and laws of this state can never leave the citizen such remedy only, for a clear infringement of his private rights. Nor is it an available argument to say that if the defendants, as the assignees of John Denn, are to respond to the plaintiff in this action for the injury to his property by reason of an act authorised by law, the consequences to them may be ruinous, and the work contemplated by the act, absolutely prevented. Suppose it to be so, may it not be answered that in accepting the grant, they acted voluntarily, and should have foreseen and provided against the consequences, and would it not be equally if not more unjust and oppressive upon the plaintiff, to ruin and destroy his property, without the slightest compensation or recompense.

I am of opinion that the plea is no justification to the act complained of, and that the demurrer therefore be sustained.

HORNBLOWER, CH. J. concurred in sustaining the demurrer. He had not time to prepare a written opinion.

FORD, J. Read an opinion sustaining the demurrer.

WHITE, J. was not present at the argument, and gave no opinion.

*Judgment for Plaintiff, on the demurrer, with costs.*

CITED *in Bordentown & S. A. T. R. Co.* v. *C. & A. R. R. Co.,* 2 *Harr.* 320; *American Print Works* v. *Lawrence,* 1 *Zab.* 260; *Del. & Rar. Can. Co.* v. *Lee,* 2 *Zab.* 247; *American Print Works* v. *Lawrence,* 3 *Zab.* 600–601–613; *Tinsman* v. *Bel. Del. R. R. Co.,* 2 *Dutch.* 167–168–174; *Trenton Water Power Co.* v. *Raff,* 7 *Vr.* 340–342–343; *State* v. *Crane,* 7 *Vr.* 403; *Coster* v. *Tide Water Co.,* 3 *C. E. Gr.* 63–64.